UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:21-CR-35-TAV-DCP |
| | ) |
| KEVIN M. MCCOLLUM, JR., | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate. This case is before the Court on the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's Release Order [Doc. 26], filed on July 13, 2021, and referred [Doc. 27] to the undersigned for an evidentiary hearing on that same day. On March 17, 2021, the Grand Jury charged the Defendant Kevin McCollum ("Defendant") and one other with knowingly and intentionally possessing with intent to distribute forty (40) grams or more of a mixture and substance containing a detectable amount of fentanyl, a controlled substance, and a quantity of heroin on or about March 16, 2020 [Doc. 3]. The Defendant was arrested on July 9, 2021 and brought before Magistrate Judge Patricia T. Morris for an initial appearance on the same day in the Eastern District of Michigan [Doc. 32]. The Defendant requested a detention hearing, which was held before Magistrate Judge Anthony P. Patti on July 12, 2021 [Doc. 32]. Magistrate Judge Patti determined that McCollum could be released with conditions but stayed the release order until 12:00 p.m. on July 13, 2021 to allow the United States time to appeal the released order.

The Government filed the instant Emergency Motion, objecting to the Defendant's release due to the nature of the charges against him, potential danger to the community, and risk of flight revealed by the Defendant's criminal history. The Government requested that the Defendant's release continue to be stayed until the Court held a hearing in this district and that the Court revoke Magistrate Judge Patti's release order.

That same day, United States District Judge Thomas A. Varlan ordered [Doc. 27] that the release order be stayed, that the Defendant be detained pending resolution of the Government's emergency motion, that the United States Marshal or his authorized deputy transport the Defendant to this district on or before Wednesday, August 4, 2021,[1] and that the undersigned hold a hearing on the matter of the Defendant's detention or release and prepare a report and recommendation on the issue. The Defendant arrived in the district and appeared before the undersigned for an initial appearance on August 19, 2021.

The parties appeared before the undersigned on August 30, 2021, for a hearing on the pending motion. Assistant United States Attorney Brent N. Jones appeared on behalf of the Government. Attorney Donny M. Young represented the Defendant, who was also present. The Court heard the arguments of counsel and some additional proffered information from defense counsel. Based upon the Pretrial Services Report prepared in the Eastern District of Michigan, a memorandum by United States Probation Officer Travis Worthington from this district, as well as the information proffered in the Defendant's initial detention hearing and at the August 30 hearing, the conditions imposed by Magistrate Judge Patti, and the factors listed in the Bail Reform Act,

---

[1] The Court notes that there was a delay in directing the United States Marshal to initiate transport of the Defendant, causing the Defendant's initial appearance before the undersigned to take place on August 19, 2021.

the undersigned **RECOMMENDS** that the Government's Emergency Motion be **GRANTED** and that the Defendant be detained pending his trial in this matter.

I. **SUMMARY OF INFORMATION OFFERED AT THE JULY 12 DETENTION HEARING**[2]

The Defendant appeared for a detention hearing in the Eastern District of Michigan on July 12, 2021. Assistant United States Attorney Caitlin B. Casey represented the Government. Attorney Casey N. Swanson represented the Defendant who was also present via video.

Regarding the Defendant's dangerousness, AUSA Casey stated that the Defendant had been charged with possession with intent to deliver 40 grams or more of a mixture of heroin and fentanyl. She contended that this offense would subject the Defendant to a substantial jail sentence if convicted.

Magistrate Judge Patti noted on the Defendant's pretrial report that the last charge against him was a pending state case out of Campbell County, Tennessee, involving drugs and asked if the state charge was based on the same nexus as the federal charge. AUSA Casey responded that the subject matter of the state case was, indeed, the same and that the U.S. Attorney's Office in the Eastern District of Tennessee had adopted that case. Magistrate Judge Patti then asked if there had been any instances of the Defendant failing to appear in the aforementioned case. AUSA Casey responded that there had been no notices of nonappearance by the Defendant but that the Campbell County records are not recorded online and are otherwise difficult to obtain, making it unclear whether the Defendant had been required to appear at all in the state case. Magistrate Judge Patti

---

[2] The Court reviewed the recording of the July 12, 2021 hearing where Magistrate Judge Patti announced from the bench the conditions of the Defendant's release. *United States v. McCollum,* No. 2:21-mj-30343 (E.D. Mich. July 12, 2021).

inquired as to whether the Defendant was out on bond regarding the state case and if there had been any bond violations. AUSA Casey responded that the Defendant was out on bond for the state case and that no bond violations had been reported.

With respect to the § 3142(g) factors, AUSA Casey argued that the factors weighed strongly in favor of detention. She argued that the Defendant was the driver of a vehicle in which law enforcement found nearly 100 grams of heroin and fentanyl in different baggies. There were seven cell phones found in the vehicle along with two sets of digital scales and a loaded handgun. AUSA Casey argued that drug trafficking is an inherently dangerous offense, and the potential danger here was exacerbated by the existence of a loaded handgun and the large amount of drugs in the vehicle—the identification of the substance as being a mixture of heroin and fentanyl was later confirmed via laboratory testing.

AUSA Casey argued that the nature and circumstances of the charges as well as the presence of the drugs and gun present a great danger to the community. She also argued that there is a presumption against release of the Defendant in this case. AUSA Casey argued that dangerousness is presumed when there are charges of drug trafficking, even though the arrest of the Defendant for this offense was not dangerous because the Defendant did not resist and the Defendant has no prior history of violence. After questioning from Magistrate Judge Patti, AUSA Casey confirmed that the handgun was found on the passenger side of the vehicle and that the codefendant in this matter had made some admissions concerning ownership of the handgun.

AUSA Casey noted that the Defendant has one prior felony conviction for drug trafficking, specifically delivery and manufacture of between 50–449 grams of a controlled substance. The conviction was from 2009, and the Defendant was sentenced to thirty months' probation and

twelve months of tether monitoring. The Defendant violated the probation conditions, but it was unclear whether the probation was terminated unsatisfactorily at the time of the violation or whether it continued. The Defendant also has a 2010 conviction for driving with a suspended license and a 2011 conviction for misdemeanor possession of marijuana second offense, for which he spent sixty days in jail. The Defendant was charged in 2020 by the state of Tennessee for the current matter.

AUSA Casey argued that the Defendant has continued to engage in the same criminal activity even ten to eleven years past his prior drug trafficking conviction. She also argued that the Defendant resides in Michigan and has no contacts in the Eastern District of Tennessee, presenting a strong risk of nonappearance. The Defendant also has limited employment history and is currently unemployed, indicating a risk of nonappearance.

AUSA Casey argued that the factor relating to the danger to the community posed by the Defendant's release weighs in favor of detention. This is because the Defendant has continued to engage in drug trafficking activities and the circumstances of the current case against him. The Government disagreed with the pretrial services report suggesting that certain conditions could be imposed on the Defendant to ensure his appearance in court and the safety of the community, stressing the nature of the charges against the Defendant and his lack of ties to the charging district.

Attorney Swanson remarked that the Defendant is a thirty-one-year-old, lifelong resident of the Detroit area with strong family relationships. Many of his family members were present at the hearing via video. The Defendant lives with his grandmother currently but has lived with his mother in the past. Both family members offered to take the Defendant into their respective homes and serve as third-party custodians should he be released. The Defendant is a high school graduate

5

and has been in a committed, six-year relationship with his partner.  Attorney Swanson noted that the Defendant does have relevant employment history.  He had most recently been working at Amazon, but he is no longer working because he recently sustained severe injuries stemming from a car wreck.

Attorney Swanson noted that the Defendant is in poor physical health.  He suffers from Still's disease which causes some paralysis in his leg requiring him to use a cane, and he has hypercalcemia.  As a result of the car wreck, he suffered a torn rotator cuff and a head injury.  He is still receiving physical therapy for some of his health conditions.

Attorney Swanson further noted that the Defendant has no violent criminal history.  She admitted that he has one prior felony drug offense but that he was nineteen years old at the time and was compliant on bond in that case.  He has never traveled internationally, does not own a passport, and has no ties in other states.  Further, he has been charged at the state level with the same drug offenses, has been released on bond in that case, and has been compliant with his bond conditions.  When he was on probation, he "adjusted well."  Apparently, there was one known violation of his probation, but neither party was able to determine what the offense was.

The Defendant's mother has stated that she will ensure he attends court in both Michigan and Tennessee as is required of him.  Attorney Swanson asked the Court to accept the recommendation from pretrial services, arguing that there are conditions or a combination of conditions which could ensure compliance from the Defendant and the safety of the community.

Magistrate Judge Patti found that the Defendant could be released on bond with conditions.

## II. SUMMARY OF INFORMATION OFFERED AT THE AUGUST 30 HEARING

At the August 30 hearing on the instant motion, AUSA Jones explained that DEA

6

Case 3:21-cr-00035-TAV-DCP   Document 34   Filed 09/03/21   Page 6 of 19   PageID #: 91

Taskforce Officer Bradley Robbins was present and available to testify if needed as to the traffic stop involving the Defendant, including to the facts and circumstances surrounding the police report, which were also set forth in United States Probation Officer Travis Worthington's memorandum. Officer Robbins would also be able to testify that a typical user amount of heroin and fentanyl would be .10 to .20 grams. The Defendant stipulated to the amount a typical user of heroin and fentanyl would normally use, as proffered by AUSA Jones. Attorney Young stated that the Defendant would be relying on the pretrial services report out of the Eastern District of Michigan, which recommended conditions for the Defendant to be released on bond.

AUSA Jones argued that the Defendant should continue to be detained pending trial in this case. This is not necessarily because the Defendant is a flight risk, but because he poses a risk of danger to the community, and this is a presumption case. AUSA Jones explained that the Defendant is a Detroit resident, and that when he was stopped in the Eastern District of Tennessee, Tennessee Highway Patrol found a firearm in the car along with 99.6 grams of a substance containing a mixture of heroin and fentanyl and over $6,000 in bulk cash.

AUSA Jones remarked that no reason has been presented explaining why the Defendant was in the Eastern District of Tennessee on March 16, 2020. Further, AUSA Jones postulated that, given the Defendant's criminal history and the large amount of heroin and fentanyl found in the vehicle, it is likely that the Defendant came to the Eastern District of Tennessee to traffic drugs therein. AUSA Jones argued that the substances found in the car are known to be particularly harmful, so they represent a great danger to the community.

AUSA Jones argued that based on the reasons presented, the Defendant was likely drug trafficking in the Eastern District of Tennessee, and no argument has been presented that the

7

Defendant would *not* be a risk to the safety of the community if released. Thus, the Government argues that the Defendant should continue to be detained pending resolution of this case.

Attorney Young agreed that this is a presumption case, but he stressed that the presumption was rebuttable. Attorney Young argued that the Government is relying on evidence as if it has already been deemed admissible for trial, and Attorney Young explained that there would be challenges as to the validity of the traffic stop and the evidence that was seized.

Attorney Young agreed with the severity of the charges but remarked that the Defendant has yet to be convicted in this case so it is improper to label him as a "drug dealer." Attorney Young argued that the Defendant is a lifelong resident of Detroit with strong family ties and support there. Attorney Young explained that the Defendant has been supported by his family following a car accident that left him with severe injuries. His injuries led to the Defendant being unable to work, even though he had been working at Amazon prior to the accident.

Attorney Young argued that the Defendant has no history of serious substance abuse. He admitted that the Defendant does use marijuana as a form of pain control for Still's disease. Attorney Young explained that the Defendant has no history of nonappearance for court proceedings. Attorney Young admitted that the Defendant has one prior felony conviction that is twelve years old and occurred when the Defendant was nineteen-years old. The Defendant's probation was terminated for that prior conviction following a violation, but it is ambiguous as to whether it was terminated or revoked. Attorney Young stated that the pretrial services report claimed that the probation was "closed." The Defendant has some prior misdemeanor convictions but has no history of violence.

Attorney Young remarked that the Defendant is in poor health. He suffers from Still's

disease, and he has hypercalcemia which leads to heart problems. The Defendant was in a car accident that resulted in head injuries and a torn rotator cuff for which he has been receiving physical therapy. Attorney Young explained that, given the Defendant being so far from his home and his extensive injuries, it would be "punitive" to continue to detain him. The Defendant's mother was present at the evidentiary hearing by telephone, but she was not asked to testify.

Attorney Young argued that no specifics were offered as to why the Defendant would be a flight risk or pose a danger to the community as argued by the Government. He further argued that the pretrial services report from the Eastern District of Tennessee focused on the codefendant's conduct. He explained that the codefendant had claimed ownership of the handgun and that the report did not otherwise indicate that the Defendant would be a risk to the community.

Attorney Young stated that the Defendant would be able to stay with his aunt and his grandmother upon his release and that there were no weapons in the household. The Defendant's mother offered to be his third-party custodian.

AUSA Jones offered that the Government does not dispute the Defendant's health conditions. AUSA Jones argued detention is still appropriate considering the nature and circumstances of the charges and the Defendant's criminal history. AUSA Jones stated that there are no conditions or combination of conditions that would be suitable to ensure the safety of the community if the Defendant were to be released.

### III. POSITIONS OF THE PARTIES

At the August 30 hearing, AUSA Jones argued that no conditions of release could assure the Defendant's appearance or the safety of the community. With respect to his risk of nonappearance, he stated that the Defendant is a lifelong Michigan resident with no family ties to

9

the Eastern District of Tennessee.

Regarding the Defendant's dangerousness, AUSA Jones argued that the evidence obtained at the traffic stop links the Defendant to nearly 100 grams of a substance containing a mixture of heroin and fentanyl as well as the handgun found in the vehicle. He argued that the Defendant has a prior criminal history that includes similar drug trafficking charges. He argued that the Defendant has continued his drug trafficking activities since his initial conviction twelve years ago. AUSA Jones argued that based upon this evidence, no conditions can assure the safety of the community or the Defendant's appearance.

Attorney Young argued that the Defendant has rebutted the presumption of dangerousness, and he relied on conditions and recommendations of the pretrial services report out of the Eastern District of Michigan. He stated that the pretrial services report out of the Eastern District of Tennessee offers no specific reasons as to why the initial report should not be followed. Further, he argued that no specific reason has been offered to explain how the Defendant poses a flight risk or a risk to the safety of the community. In any case, he stated that the Defendant will challenge the validity of the evidence used by the Government and the traffic stop and, further, that the Defendant is presumed innocent at this stage.

Mr. Young explained that the Defendant has many serious health conditions, including Still's disease, hypercalcemia, and head and rotator cuff injuries he suffered after a serious car accident. He explained that the Defendant is not currently employed because of the health complications resulting from the wreck but that he had been working full time prior to the accident. He argued that the Defendant has no history of violence or of nonappearance in court. He stated that the Defendant has strong family ties and that his family members have assured that they will

10

Case 3:21-cr-00035-TAV-DCP   Document 34   Filed 09/03/21   Page 10 of 19
PageID #: 95

keep the Defendant accountable regarding court dates and any conditions of release.

Attorney Young maintained that there are conditions that would assure the safety of the community and the Defendant's appearance as required. The Defendant has a stable place to live with his aunt and grandmother in Michigan, and his aunt, grandmother, and mother have all offered to serve as his third-party custodians. Attorney Young asserted that the conditions proposed by the Eastern District of Michigan will ensure the Defendant's appearance and safety of the community.

## IV. STANDARD OF REVIEW

The Bail Reform Act of 1984 provides that individuals accused of a federal crime must be released on personal recognizance or on an unsecured appearance bond "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If release on personal recognizance or an unsecured appearance bond will not reasonably assure the person's appearance or the safety of the community, the judicial officer shall order that the individual be released on conditions. 18 U.S.C. § 3142(c). However, upon the Government's motion, the judicial officer may detain a person charged with certain serious federal crimes or who poses a "serious risk" of flight, witness intimidation, or obstruction of justice, if the judge finds, after a detention hearing, "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f) & -(e). At the detention hearing, the government must prove by a preponderance of the evidence that the individual is a flight risk and/or by clear and convincing evidence that the person is a danger to the community or others. *See* 18 U.S.C. § 3142(f).

11

In the instant case, the Government moved for detention, and Magistrate Judge Patti held a detention hearing, because Defendant McCollum is charged with an offense under the Controlled Substances Act for which the maximum term of imprisonment is ten years or more. *See* 18 U.S.C. § 3142(f)(1)(C). Due to the crime charged, a rebuttable presumption applies "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3)(A). In this respect, the Indictment provides probable cause to believe that the Defendant has committed an offense under the Controlled Substances Act for which he faces a maximum sentence of ten years or more. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985) (holding that the indictment establishes probable cause for purposes of the rebuttable presumption). This presumption places the burden of production with the Defendant, while the Government retains the burden of persuasion. *Stone*, 608 F.3d at 945. To satisfy his burden of production, the Defendant must present at least some evidence that he is not a danger or a flight risk. *Id.* Even when the Defendant meets the burden of production, the Court must continue to weigh the presumption that detention is appropriate along with the other factors because "the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.*

"If a person is ordered released by a magistrate judge . . ., the attorney for the Government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order[.]" 18 U.S.C. § 3145(a)(1). The district judge reviews the decision to release or detain the Defendant *de novo*.[3] *United States v. Yamini*, 91 F. Supp. 2d 1125, 1128 (S.D. Ohio 2000)

---

[3] Although a magistrate judge cannot review another magistrate judge's decision to release

12

(holding that although the Sixth Circuit has yet to address this issue, the majority of circuits hold that *de novo* review is appropriate); *see also United States v. Tolbert*, Nos. 3:09-CR-56-TAV-HBG & 3:10-CR-30-TAV-HBG, 2017 WL 6003075, *4 (E.D. Tenn. Dec. 4, 2017). "[M]eaningful de novo review means that the district court should engage in the same analysis, with the same options, under § 3142 as the magistrate judge." *Yamini*, 91 F. Supp. 2d at 1129; *Tolbert*, 2017 WL 6003075, *4 (observing that the district judge has discretion to consider additional evidence to that presented at the original detention hearing). A motion to revoke a release order must be "determined promptly." 18 U.S.C. § 3145(a).

## V. ANALYSIS

As discussed above, the Court finds that the rebuttable presumption under 18 U.S.C. § 3142(e)(3)(A) that there is "no condition or combination of conditions [that] will reasonably assure the appearance of the person as required and the safety of the community" applies in this case, because the Defendant is charged with a violation of the Controlled Substances Act for which the maximum potential penalty is ten years or more. However, the Court also finds that the Defendant has rebutted this presumption by providing evidence that he has a proposed stable residence in Michigan with family, a proposed third-party custodian, and he has no history of violence. However, the Court must still consider the presumption that detention is appropriate, along with the other factors. *See Stone*, 608 F.3d at 945.

---

a defendant, a district judge may refer the government's motion to revoke a release order to a magistrate judge for report and recommendation. *United States v. Shaw*, No. 5:17-CR-26-KKC-REW, 2017 WL 5711438, *2-3 (E.D. Ky Nov. 17, 2017) (Wier, MJ), *adopted by,* No. 5:17-CR-26-KKC-REW, 2017 WL 5710443 (E.D. Ky Nov. 27, 2017) (Caldwell, CJ). The district judge will ultimately conduct a *de novo* review of the detention issue by reviewing the report and recommendation, which considers all of the evidence offered to that point. *Id.* at *3.

13

The Court now turns to "whether there are conditions of release that will reasonably assure" the Defendant's appearance at court proceedings and the safety of others and of the community. 18 U.S.C. § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense, (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) the nature and seriousness of the danger to the community posed by his release. 18 U.S.C. § 3142(g).

First, the nature and circumstances of the offense weigh in favor of detention because the charged offense involves a controlled substance. 18 U.S.C. §3142(g)(1). The Defendant is charged with knowingly and intentionally possessing with intent to distribute forty (40) grams or more of a mixture and substance containing a detectable amount of fentanyl, a controlled substance, and a quantity of heroin on or about March 16, 2020.

Regarding the second factor, the Court initially observes that the charged offense is among those crimes for which Congress has deemed the offender particularly dangerous or particularly likely to flee. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) (noting that Congress has attached a presumption to those types of crimes, such as drug trafficking, which indicate a "strong probability" that the perpetrator will flee). In this case, the weight of the evidence of the Defendant's dangerousness is significant because the Defendant is charged with knowingly and intentionally possessing with intent to distribute forty (40) grams or more of a mixture and substance containing fentanyl and heroin. In this regard, the Court notes that drug trafficking is inherently dangerous. *United States v. Hernandez*, 2002 WL 1377911, *2 (E.D. Tenn. Feb. 27, 2002) (Edgar, J.) (holding that drug trafficking is inherently dangerous). Beyond the presumption of dangerousness, the record contains evidence that the alleged drug trafficking was conducted in a dangerous manner as a firearm was found in the vehicle during the traffic stop. While

14

the Court agrees with Magistrate Judge Patti's conclusion that conditions may be put in place that would reasonably assure the Defendant's appearance at future court proceedings, the Court finds that the allegations submitted by the Government support a finding that the Defendant poses a significant danger to the community, such that sufficient conditions may not be imposed. The Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone,* 608 F.3d at 947 n.6 (observing that "drug trafficking is a serious offense that, in itself, poses a danger to the community").

Moreover, regarding the weight of the evidence of the Defendant's dangerousness, the Court finds that the Defendant has one prior felony drug conviction. The Defendant was convicted in 2009 for the offense of delivery and manufacture of between 50–449 grams of a controlled substance. The Defendant has pending state charges in Campbell County, Tennessee, which appear to be related to the instant offense. The Court notes, as defense counsel argued, that the Defendant has no apparent history of violence nor any convictions for violent felonies or misdemeanors. The Court finds that this particular evidence is not clearly indicative of either the Defendant's dangerousness or the Defendant's lack thereof.

The Court finds that the weight of the evidence suggests that there is a moderate flight risk as to the Defendant. *See* 18 U.S.C. §3142(g)(2). The Court notes that the Defendant is a lifelong Michigan resident with strongly family ties in that state but no known ties to the Eastern District of Tennessee. There are no known instances of the Defendant's nonappearance for court; however, the circumstances revolving around the termination of his probation in 2012 are unclear. A violation of probation warrant was issued, but it is unclear if the termination of his probation was

15

deemed successful or unsuccessful. Considering all the evidence, including the presumption from *Stone,* 608 F.3d at 947 n.6, the Court finds that the Defendant poses a moderate flight risk. Given the weight of the evidence against the Defendant, including the potential danger to the community and risk of flight, the second factor weighs in favor of detention.

The third factor examines the Defendant's history and characteristics, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings," along with evidence of whether the Defendant was on conditions of release at the time of the current offense. 18 U.S.C. § 3242(g)(3)(A)-(B). The Court finds significant evidence of the Defendant's strong family ties, which support release. The Defendant has many family members who reside in the Detroit area, in which he was living prior to this arrest and to which he plans to return. The Defendant's aunt and grandmother will allow him to live with them, and his mother offered to be his third-party custodian. The Court acknowledges that the Defendant's initial detention hearing in the Eastern District of Michigan was attended by many of his family members via video. As well, even though she did not present testimony, the Defendant's mother attended the hearing in the Eastern District of Tennessee on August 30, 2021, by telephone. As stated previously, the Defendant has resided in Detroit all his life and has strong ties there but has no ties to the Eastern district of Tennessee.

The Defendant has some employment history of note. He had been working for Amazon prior to sustaining injuries in a serious car accident in March 2021; however, he is currently unemployed. The Court has not been presented with any evidence to suggest that the Defendant

16

has any mental health issues.  The Court also notes that the Defendant suffers from various health conditions.  These include:  Still's disease, hypercalcemia, and injuries to his head and rotator cuff stemming from his car accident and for which the Defendant is being treated with physical therapy.  The Court finds all the above weighs mostly in favor of the Defendant's release; however, the Court does note its concern that the Defendant has no ties to the Eastern District of Tennessee, even if he has strong family support in Michigan.

The Defendant has a prior felony drug conviction from 2009, based on cocaine trafficking.  The Defendant also has convictions for driving on a suspended or revoked license and possession of marijuana, second offense.  The Defendant has also admitted using marijuana daily, including the day prior to his arrest.  There is no history of violence from the Defendant.  There is history, albeit unclear, of a prior probation violation from the Defendant occurring in 2012.

Considering both the Defendant's history and characteristics, the Court finds that they weigh mostly in favor of detention, particularly because of the Defendant's prior criminal history and lack of ties to the Eastern District of Tennessee.  *See* 18 U.S.C. §3142(g)(3).

Finally, the Court examines the nature and seriousness of the danger to any person or the community that would be posed by the Defendant's release.  18 U.S.C. §3142(g)(4).  The Government again points to the charged offense and the Defendant's drug-related criminal history, arguing that the nature and seriousness of the danger he presents is high, particularly in light of the risk of dangerousness associated with trafficking heroin and fentanyl.  AUSA Jones argued that none of the conditions imposed by Magistrate Judge Patti would assure the Defendant's attendance in court and the safety of the community.  The Court agrees.  Due to the overwhelming risk of dangerousness associated with trafficking heroin and fentanyl, and without any details to assess

17

the suitability of the Defendant's proposed residence with his grandmother and aunt or his mother serving as third-party custodian, the proposed conditions are insufficient to reasonably assure the safety of the community. *See, e.g.*, *United States v. Williams*, No. 3:19-CR-187-TAV, 2020 WL 2529356, at *6 (E.D. Tenn. May 18, 2020) ("While the hand-to-hand sales which defendant is charged with committing may not have involved violence, the absence of violence does not diminish the impact of heroin and fentanyl drug trafficking in terms of contributing to opioid addiction and all its attendant harms."). The Court finds that are no apparent conditions or combination of conditions to reasonably assure the Defendant's appearance in court and the safety of the community. The Court finds the fourth factor weighs decidedly in favor of detention.

Accordingly, the Court finds that the evidence and information provided at the hearing established by clear and convincing evidence that: (1) the Defendant poses a serious risk of danger to the community or another person; and (2) no condition or combination of conditions will reasonably assure the safety of individuals or the community if the Defendant were released on bond and recommends that the Defendant be detained pending resolution of his case.

## VI. CONCLUSION

The Court has carefully considered the Pretrial Services Report from the Eastern District of Michigan; the August 30, 2021 memorandum from United States Probation Officer Travis Worthington; the recording of the July 12, 2021 detention hearing in the Eastern District of Michigan; the Rule 5 paperwork from that district [Doc. 32]; the stipulations, proffers, and argument from the August 30, 2021 motion hearing; the rebuttable presumption; and the § 3142(g) factors. For the reasons discussed herein, the undersigned **RECOMMENDS** that the Government's Emergency Motion Under 18 U.S.C. § 3145 for Revocation of Magistrate Judge's

Release Order [Doc. 26] be **GRANTED**, and that the Defendant remain detained pending resolution of his case. Due to the need to determine this issue promptly, any objections to this report and recommendation must be served and filed on or before **September 10, 2021**.[4] Any response to objections must be filed on or before **September 14, 2021**.

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[4]Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582, 587 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time waives the right to appeal the district court's order). The District Judge need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

19