UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No.: 3:21-CR-35-TAV-DCP-2 |
| KEVIN M. MCCOLLUM, JR., | ) |  |
| Defendant. | ) |  |

# MEMORANDUM OPINION AND ORDER

This matter is before the Court on defendant's pro se motion for compassionate release [Doc. 81]. The Federal Defender Services of Eastern Tennessee ("FDSET") filed a notice of no intent to supplement the pro se motion [Doc. 83]. The government responded in opposition [Doc. 84. For the reasons set forth below, defendant's motion for compassionate release [Doc. 81] is **DENIED**.

## I. Background

On December 15, 2021, defendant pleaded guilty to possession with intent to distribute 50 grams or more of fentanyl and a quantity of heroin, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(B), 841(b)(1)(C) [Docs. 39, 44]. On May 4, 2022, the Court sentenced defendant to 60 months' imprisonment [Doc. 58].

## II. Legal Standard

A court generally lacks "the authority to change or modify [a sentence, once imposed,] unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (citing *United States v. Curry*, 606 F.3d 323,

326 (6th Cir. 2010)). The First Step Act of 2018's amendment of § 3582(c)(1)(A) revised one such exception. First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018). Prior to the First Step Act, a district court could grant relief under § 3582(c)(1)(A) only on motion of the Director of the Bureau of Prisons. Now a court may modify a defendant's sentence upon a motion by a defendant if the defendant has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or after the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A).

If the defendant surmounts this preliminary hurdle, the Court may grant a sentence reduction "after considering the factors set forth in section 3553(a) to the extent that they are applicable" if it finds:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Id*. Defendant seeks relief under § 3582(c)(1)(A)(i) [Doc. 829].

If the exhaustion requirement is satisfied, courts must then follow the statute's three-step test:

> At step one, a court must "find[ ]" whether "extraordinary and compelling reasons warrant" a sentence reduction. At step two, a court must "find[ ]"

2

whether "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13. Thus, if § 1B1.13 is still "applicable," courts must "follow the Commission's instructions in [§ 1B1.13] to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case."

*United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020) (internal citations omitted). In considering a compassionate release motion, "district courts may deny compassionate release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others" but must "address all three steps" if granting such a motion. *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021).

**III.    Analysis**

    **A.    Exhaustion**

The Court first examines whether defendant has satisfied § 3582(c)(1)(A)'s exhaustion requirement, which is a mandatory prerequisite to consideration of a compassionate release request on the merits. *United States v. Alam*, 960 F.3d 831, 833–34 (6th Cir. 2020). "When 'properly invoked,' mandatory claim-processing rules 'must be enforced.'" *Id.* at 834 (quoting *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017)). The only exceptions to such a mandatory claim-processing rule are waiver and forfeiture. *Id.* (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

3

In this case, the government states that the exhaustion requirement appears to have been satisfied [Doc. 84, p. 2]. Accordingly, the Court will turn to addressing the merits of defendant's request for compassionate release.

### B. Extraordinary and Compelling Reasons

The Court first notes that the Sixth Circuit previously held that "[i]n cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement of § 1B1.13." *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). This was so because the applicable policy statement, United States Sentencing Guideline § 1B1.13, as written at the time, did not contemplate inmate-filed motions for compassionate release, but instead, was limited to circumstances where the Bureau of Prisons filed a motion on an inmate's behalf. *Id.* at 1109–10; *see also* U.S.S.G. § 1B1.13 (2018).

However, the Sentencing Commission amended the policy statement in § 1B1.13, effective November 1, 2023, to encompass inmate-filed motions for compassionate release. U.S.S.G. § 1B1.13 (2023). It thus appears that the Sixth Circuit's prior ruling that § 1B1.13 is not an applicable policy statement to inmate-filed motions for compassionate release is no longer consistent with the Guidelines. *See United States v. Ringgold*, No. ELH-17-232, 2023 WL 7410895, at *5–6 (D. Md. Nov. 8, 2023) ("[I]t appears that the Fourth Circuit's conclusion in *McCoy*, 981 F.3d at 281, to the effect that '§ 1B1.13 is not an 'applicable' policy statement,' is no longer consistent with the Guidelines. This is because the Policy

4

Statement is now expressly applicable to defendant-filed motions pursuant to 18 U.S.C. § 3582(c)(1)(A).") However, "[t]he new policy statement largely preserves the discretion district courts held to consider any extraordinary and compelling reason for release." *United States v. Davis*, No. 3:20-cr-16, 2023 WL 7356579, at *2 (W.D. N.C. Nov. 7, 2023).

As amended, § 1B1.13(b) states that "[e]xtraordinary and compelling reasons exist under any of the following circumstances or a combination thereof," and discusses when the medical circumstances of the defendant, the age of the defendant, the family circumstances of the defendant, the defendant's victimization in custody, and other reasons may constitute extraordinary circumstances. U.S.S.G. § 1B1.13(b)(1)–(5).

In his pro se motion, defendant primarily relies on the risk of illness from COVID-19 [Doc. 81]. He notes that he suffers from "Hypercalcemia, Still Disease (locks up), bone disease, obesity," all of which he asserts make infection with the COVID-19 virus an extreme risk to his health [*Id.* at 14]. Defendant also states that there are not enough staff at his facility, USP Hazelton, to ensure timely treatment for serious chronic medical conditions [*Id.* at 8]. Finally, defendant notes that he has four children and expresses his desire to be involved in their lives [*Id.* at 14].

1. **COVID-19 Risk**

As to the risk of contracting COVID-19, § 1B1.13(b)(1)(D) indicates that the following circumstances may constitute extraordinary and compelling grounds for compassionate release:

> (i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious

> disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and
>
> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G. § 1B1.13(b)(1)(D). Defendant has not made an adequate showing under this section.

First, defendant is housed at USP Hazelton [Doc. 81, p. 13]. Inmate Locator, Federal Bureau of Prisons, *available at* https://www.bop.gov/inmateloc/ (accessed Oct. 28, 2024). As of October 9, 2024, the Bureau of Prisons ("BOP") reported that there were 0 open COVID-19 cases at that facility.[1] Inmate COVID-19 Data, Federal Bureau of Prisons, *available at* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (accessed Oct. 28, 2024). Additionally, the BOP reports that 2170 out of 3789 total inmates have been vaccinated against COVID-19. *Id.* In his motion, defendant simply alleges that "USP Hazelton Complex is most likely one of the worst facilities," citing a letter alleging issues relating to living conditions, safety, and the changing of medical records at the facility [Doc. 81, pp. 7–8]. But this is insufficient to establish that USP Hazelton is being affected by, or at imminent risk of being affected by an ongoing outbreak of infectious disease or

---

[1] The Court acknowledges that defendant alleges that the BOP is no longer reporting positive COVID-19 cases, is not testing inmates, and discourages inmates from seeking medical care for suspected COVID-19 [Doc. 81, p. 9]. But even if the Court were to discount the BOP's reported statistics based on this allegation, defendant still has not sufficiently alleged that USP Hazelton is being affected by, or at imminent risk of being affected by an ongoing outbreak of an infectious disease or an ongoing public health emergency.

an ongoing public health emergency. Indeed, defendant does not specifically allege that USP Hazelton is, or is at imminent risk of, experiencing a COVID-19 outbreak. And defendant bears the burden of establishing that extraordinary and compelling reasons support his request for compassionate release. *See United States v. Calton*, No. 5:18-cr-592, 2024 WL 1087904, at *2 (N.D. Ohio Mar. 13, 2024) (noting that the defendant "bears the burden of proof to show that he is eligible for a sentence reduction" under § 3582(c)(1)(A)).

Second, even if defendant had established that USP Hazelton is affected by or at imminent risk of being affected by a COVID-19 outbreak, he has not shown that his personal health factors place him at an increased risk of severe medical complications or death, as required by § 1B1.13(b)(1)(D)(ii). Defendant cites as his underlying medical conditions "Hypercalcemia, Still Disease . . . bone disease, [and] obesity" [Doc. 81, p. 14].[2] But, of these conditions, the Center for Disease Control only recognizes obesity as a "condition[] that can increase risk" of COVID-19. People with Certain Medical Conditions and COVID-19 Risk Factors, Center for Disease Control, *available at* https://www.cdc.gov/covid/risk-factors/index.html (accessed Oct. 28, 2024). And

---

[2] The Court notes that, in response, the government provided medical records from the BOP [Doc. 85]. Those records contain no mention of "hypercalcemia" or "bone disease," although there is one record reflecting test results where defendant's calcium was out of range [*Id.* at 44]. Additionally, the BOP medical records indicate that defendant reported a history of Stills disease [*Id.* at 30], but BOP medical staff later concluded defendant's issues were "unlikely Stills dz" [*Id.* at 13].

7

defendant has provided no medical records to support his claim to suffer from obesity.[3] As a result, defendant has not met his burden of establishing that he has a personal health factor that would place him at an increased risk of severe medical complications or death from COVID-19. *See United States v. Elias*, 984 F.3d 516, 620 (6th Cir. 2021) (stating that the district court could have denied a motion for compassionate release on the ground that the defendant did not provide any records to support her claimed medical condition).

Finally, even if defendant had established that USP Hazelton was affected, or at imminent risk of being affected by, a COVID-19 outbreak, and that he had personal health risk factors that placed him at an increased risk of suffering severe medical complications or death from COVID-19, he has not established that such risk cannot be adequately mitigated in a timely manner. *See* U.S.S.G. § 1B1.13(b)(1)(D)(iii). The Court notes that the Sixth Circuit has previously held that "a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction." *United States v. Lemons*, 15 F.4th 747, 751 (6th Cir. 2021). In so holding, the Sixth Circuit stated that "following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced." *Id*. As a result, the Sixth Circuit has held that "with COVID-19 vaccinations now available to federal prisoners," the COVID-19 pandemic is not an

---

[3] The BOP medical records provided by the government indicate that, as of August 20, 2024, defendant's weight was 279 pounds [Doc. 85, p. 1]. However, they do not reflect a specific diagnosis of obesity.

8

extraordinary and compelling ground for release "absent extenuating circumstances." *United States v. McKinnie*, 24 F.4th 583, 588 (6th Cir. 2022). Neither defendant nor the government have addressed defendant's vaccination status, but it appears that the COVID-19 vaccine is available to inmates at USP Hazelton. Inmate COVID-19 Data, Federal Bureau of Prisons, *available at* https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (accessed Oct. 28, 2024). Given his access to the COVID-19 vaccine, the Court cannot find that defendant's risks associated with contracting COVID-19 cannot be adequately mitigated in a timely manner.

Accordingly, the Court finds that defendant has not established that any risks associated with COVID-19 provide extraordinary and compelling grounds for compassionate release.

### 2. Staffing Shortages

Additionally, to the extent that defendant contends that staffing shortages have affected USP Hazelton's ability to treat chronic illnesses, the Court does not find that such constitutes an extraordinary and compelling ground for compassionate release comparable to those listed in § 1B1.13(b)(1)–(4). *See* U.S.S.G. § 1B1.13(b)(5). The Court notes that "[g]eneralized statements about the conditions of confinement do not constitute compelling reasons for compassionate release." *United States v. Allard*, No. 5:00-110, 2022 WL 11859598, at *2 (E.D. Ky. Oct. 20, 2022) (internal quotation marks omitted). Moreover, to the extent that defendant claims the prison conditions constitute cruel and unusual

9

treatment in violation of the Eighth Amendment, "such a claim would be best addressed in a civil lawsuit, rather than in a claim for relief pursuant to Section 3582(c)." *Id*. But, for purposes of the instant motion for compassionate release, defendant has simply alleged that a staffing shortage affects the BOP's ability to provide care for inmates' chronic conditions, without alleging that he has personally suffered from a lack of care. Such does not rise to the level of an extraordinary and compelling ground warranting compassionate release.

### 3. Family Circumstances

Finally, to the extent that defendant's motion is based on a desire to be reunited with his children, § 1B1.13(b)(3) sets forth family circumstances that may be deemed extraordinary and compelling grounds for release. In particular, that guideline indicates that the death or incapacitation of the caregiver of defendant's child, spouse, or parent, or other immediate family member, when the defendant is the only other available caregiver, may be a reason warranting release. U.S.S.G. § 1B1.13(b)(3). But defendant's desire to reunite with his children falls far from these types of situations. And, while the Court recognizes that defendant's family may experience hardships in his absence, "[i]ncarcerated people commonly leave innocent partners, parents, and children to fend for themselves as a result of criminal conduct." *United States v. Williams*, No. 1:17-cr-103, 2020 WL 3502819, at *3 (S.D. Ohio June 29, 2020). Therefore, "[i]t is an unfortunate reality that family members commonly experience hardship during a defendant's incarceration and that defendants wish to reunite with them." *United States v. Munsey-Killian*, No. 2:15-CR-107, 2023 WL 1797902, at *3 (E.D. Tenn. Feb. 7, 2023).

10

Defendant's family circumstances, however, do not rise to the level of extraordinary and compelling reasons warranting compassionate release.

Accordingly, the Court finds that defendant has not set forth any extraordinary and compelling grounds for compassionate release, and his request will be denied.

## VII. Conclusion

For the reasons set forth more fully above, defendant's motion for compassionate release [Doc. 81] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan<br>
UNITED STATES DISTRICT JUDGE